FILED

2016 Jan-21  PM 01:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

CHRISTOPHER JONES, *et al.*,       )
                                   )
            Plaintiffs,            )
                                   )
v.                                 )          Case No. 7:15-cv-00661-TMP
                                   )
SCOTT DAVIS CHIP MILL,             )
*et al.*,                          )
                                   )
            Defendants.            )

## MEMORANDUM OPINION and ORDER

Pending before the court are Motions to Dismiss the Amended Complaint by defendants Jamie Brasher (doc. 28), Mike McMillan, and McMillan Trucking (doc. 30) (together "the defendants").[1]  The motions have been fully briefed, and the parties have consented to the exercise of dispositive jurisdiction by the undersigned.  (Doc. 26).

## STANDARD OF REVIEW

Before the Supreme Court decided Bell Atlantic v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a court could dismiss a complaint only

---

[1]   Also named in the Amended Complaint as defendants are Brett Davis and Scott Davis Chip Mill.  Those defendants, however, have not filed motions to dismiss and, accordingly, are not addressed in the instant Order.

where it was clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," as set forth in <u>Conley v. Gibson</u>, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). The well-established Rule 12(b)(6) standard set forth in <u>Conley</u> was expressly rejected in <u>Twombly</u> when the Supreme Court examined the sufficiency of a plaintiff's complaint and determined:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

550 U.S. at 555 (citations omitted). The Court went on to criticize <u>Conley</u>, stating that "[t]he 'no set of facts' language has been questioned, criticized, and explained away long enough" by courts and commentators, and "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." <u>Twombly</u>, 550 U.S. at 562-63. The Supreme Court emphasized, however, that "we do not require heightened fact

pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570.  The Supreme Court expanded on the Twombly standard when it decided Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949–50, 173 L. Ed. 2d 868 (2009), reiterating the Twombly determination that a claim is insufficiently pleaded if it offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Iqbal, 129 S. Ct. at 1949. The Court further explained:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.... Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

Iqbal, 129 S. Ct. at 1949–50 (citation omitted).  See also Sinaltrainal v. Coca–Cola Co., 578 F.3d 1252 (11th Cir. 2009) ("The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss" and "the well-pled

allegations must nudge the claim 'across the line from conceivable to plausible'" (quoting <u>Iqbal</u> and <u>Twombly</u>)).  Applying these standards, the court examines the merits of the defendants' motions to dismiss the Amended Complaint.

## <u>FACTS</u>

The plaintiffs both are African American residents of Alabama who, as sole proprietors, own and operate separate trucking businesses that regularly did business with the defendants during the relevant time.  Plaintiffs Jones and Jackson had been hauling loads of wood chips for Scott Davis Chip Mill ("the Chip Mill") for approximately two years prior to the incidents at issue in the instant case. (Doc. 24, pp. 2-3).  Both plaintiffs regularly were hired by the Chip Mill to haul wood chips from the Chip Mill to Beaumont, Texas, as well as other locations. (<u>Id.</u>)  The Chip Mill is an incorporated entity in Bibb County, Alabama and defendant Brett Davis ("Davis") is the principal owner of the Chip Mill.  Plaintiffs allege that defendant Jamie Brasher ("Brasher") is an agent of the Chip Mill, though not an employee.  Rather, he is the employee of defendant McMillan Trucking, which plaintiffs allege is an incorporated entity located in Bibb County, Alabama.  McMillan Trucking worked with the Chip Mill to assign loads to various truckers.  Defendant Mike McMillan ("McMillan") is the owner of McMillan Trucking.  Brasher is the employee of McMillan Trucking responsible

for assigning loads from the Chip Mill to truckers.  Plaintiffs allege that "[t]he arrangement entered into with Defendant Brasher by Defendants McMillan Trucking, owner Mike McMillan, Scott Davis Chip Mill and owner Brett Davis resulted in their not having to hire a dispatcher to distribute loads for transport." (Doc. 35, p. 5).

In July and August of 2014, Brasher began asking for $100 per load in cash from the plaintiffs and other African American drivers.  (Doc. 24, p. 3).  There are both African American and Caucasian truckers hauling for the Chip Mill, but Caucasian drivers were not asked to pay the $100 kickback.  (Id. at 3-4).  Brasher would pressure the African-American truckers into paying him when they arrived to get their loads.  (Id. at 3).  Plaintiff Jones refused to pay, and plaintiff Jackson paid once, but refused to pay thereafter.  (Id.)  Following Brasher's request for money, the plaintiffs met with Davis, the owner of the Chip Mill, to discuss the kickback.  Davis acknowledged the illegality of the kickback and assured the plaintiffs that he would look into it.  (Id.)  However, Davis said Brasher was too valuable for him to do anything about the issue.  (Id.)  After complaining to Davis, neither plaintiff was assigned any more hauls from the Chip Mill.  (Id.)

# DISCUSSION

**Federal Law Claims**

### I.   *42 U.S.C. § 1981*

In the Amended Complaint, the plaintiffs allege that the defendants violated 42 U.S.C. § 1981 by depriving them of the equal opportunity to contract due to racial discrimination.  The plaintiffs allege that Brasher required the plaintiffs and other African American truckers to pay him a $100 "kickback" to be assigned loads to haul.  The plaintiffs assert that this "kickback" fee was not required of Caucasian drivers.  The plaintiffs met with Davis regarding Brasher's behavior, and Davis told the plaintiffs that Brasher's behavior was "illegal" and that he would "look into it."  Ultimately, however, he told the plaintiffs that Brasher was "too valuable" for him to take any action.  Although the plaintiffs had been hauling for the Chip Mill for around two years, they were not given further work after they complained to Davis about Brasher's behavior.  The plaintiffs argue that Brasher's actions benefitted all of the defendants, making all of them responsible for it.

A claim under 42 U.S.C. § 1981 requires the plaintiff to allege and make a *prima facie* showing "(1) he or she is a member of a racial minority; (2) the defendant had intent to discriminate on the basis of race; and (3) the discrimination concerned one or more activities enumerated in the statute."  Rutstein v. Avis Rent-A-Care Systems, Inc., 211 F.3d 1228, 1235 (11th Cir. 2000).  The activities

enumerated in the statute are the rights to "make and enforce contracts, to sue, be parties, give evidence, and to the full and equal protection of all laws . . . ." 42 U.S.C. § 1981.  "[T]he term 'make and enforce contracts' includes making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privilege, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Defendants Brasher, Mike McMillan, and McMillan Trucking first argue that the plaintiffs do not have standing to sue under 42 U.S.C. § 1981 because it is the plaintiffs' trucking businesses, not the plaintiffs individually, that contract with the Chip Mill and were later deprived of business from the mill.  The defendants cite Domino's Pizza, Inc. v. McDonald, in which the Supreme Court determined that the sole shareholder and president of a corporation did not, individually, have the right to sue for alleged violations of § 1981 against the corporation.  546 U.S. 470, 479-80, 126 S. Ct. 1246, 1252 (2006).   Domino's is fundamentally distinguishable from the instant case, however, because the plaintiff in Domino's was operating an incorporated entity, while the plaintiffs in the instant case own and operate *unincorporated* sole proprietorships.  (Doc. 34, p. 7; Doc. 35, pp. 7-8).

Under Alabama law, a sole proprietorship and the owner of that business generally are considered to be the same legal entity.  See Carolina Casualty Ins. Co. v. Williams, 945 So. 2d 1030, 1040 (Ala. 2006) ("Under Alabama law,

Williams Trucking, a sole proprietorship, is considered the same legal entity as Williams, the individual.  Therefore, Williams is deemed to own the 1984 Mack dump truck titled in the name of his sole proprietorship."); Clardy v. Sanders, 551 So. 2d 1057, 1059-1060 (Ala. 1989) ("Clardy the individual and Clardy Realty, a sole proprietorship, are but a single legal entity; and the two separate capacities (Clardy as an individual, and Clardy as a sole proprietor) cannot be separated into two legal entities for the purpose of testing Clardy Realty, Inc.'s liability as a successor in interest to the liabilities of Clardy's estate."); see also Berry v. Smith, 2008 WL 3211305, at *1 (S.D. Ala. Aug. 6, 2008).

If the individual sole proprietor is liable on behalf of his or her business, it stands to reason that the reverse is true—the individual sole proprietor holds the rights of his or her business.  Indeed, that was the holding in Carolina Casualty, cited above; the owner of the sole proprietorship was the owner of a truck titled in the name of the proprietorship.  The same is true here.  Plaintiffs Jones and Jackson, as the sole proprietors of their respective businesses, own all of the rights and interests claimed by the businesses.  Accordingly, to the extent defendants Brasher, McMillan, and McMillan Trucking argue that the plaintiffs lack standing because they brought the suit in their individual capacities rather than under the names of their sole proprietor trucking companies, this is not a basis for dismissing the Amended Complaint.

Additionally, however, defendants Mike McMillan and McMillan Trucking argue that the plaintiffs do not allege in the Amended Complaint any wrongdoing on their part and, accordingly, fail to state a *prima facie* case against either McMillan individually or the corporation, McMillan Trucking, for violation of § 1981.  The plaintiffs assert that Brasher was an employee of McMillan Trucking, and that part of his employment duties was to assign loads for truckers to haul wood chips from the Chip Mill.  Defendants McMillan and McMillan Trucking do not dispute that Brasher was an employee of McMillan Trucking during the relevant time period.  They do, however, argue that "there are no allegations that Mr. Brasher was acting in the line and scope of his employment with McMillan Trucking when these alleged acts occurred."  (Doc. 30-1, p. 7).

According to the plaintiffs, as alleged in the Amended Complaint, Brasher demanded the kickbacks while he was at the Chip Mill assigning loads to be hauled, and that whether a kickback was paid directly affected the way in which he carried out his employment duties.  If African-American truckers, like plaintiffs, refused to pay the kickback, they would not be assigned a load in the ordinary course of business, but would have to wait to see if there were any "left over" loads.  Assuming these allegations of the plaintiffs to be true, as the court must on a motion to dismiss, Brasher was employed by McMillan Trucking and at least part of his employment duties was to assign loads to be hauled from the Chip Mill.

Therefore, the fact that he required a racial discriminatory "fee" to allow African American truck drivers to be assigned to particular haul routes would be an abstraction of Brasher's normal duties and, for § 1981 purposes, within the line and scope of his employment, even if not for the benefit of his employer.[2] Because it is at least plausible that McMillan Trucking, as Brasher's employer, is vicariously liable for Brasher's racially discriminatory actions, the motion to dismiss as it pertains to the plaintiffs' § 1981 claims against McMillan Trucking is due to be denied. See Arguello v. Conoco, Inc., 207 F.3d 803 (5th Cir. 2000).

Vicarious liability on the part of Mike McMillan, individually, however, is a different matter. According to the Amended Complaint, McMillan Trucking is an *incorporated* entity located in Bibb County, Alabama, and Mike McMillan is the owner and operator of the corporation. (Doc. 24, ¶¶ 5, 6). A primary purpose for incorporating a business is to protect the owner or owners from individual liability. Because McMillan Trucking is a corporation, action taken by McMillan Trucking

---

[2]     Discussed later in this opinion is whether, under Alabama state law, Brasher's extraction of a $100 kickback was within the "line and scope" of his employment for purposes of making McMillan Trucking vicariously liable for his intention torts. The court concludes that it was not. This is not inconsistent with the instant finding that, under *federal* law, the same act is regarded as being within the line and scope of his employment for purposes of vicarious liability under § 1981. The difference lies in the sources of the respective rules. One derives from federal law and the other from Alabama state law. The Supreme Court, in Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998), cast a somewhat more elastic and expansive view of the "line and scope" concept than Alabama law does, as explained below. Thus it is not inconsistent that the same act is within the line and scope of the employee's employment under § 1981, but not so under Alabama tort law.

cannot be attributed to McMillan, individually.  For purposes of § 1981, however, McMillan may be liable for racial discrimination that he himself causes or participates in, even if not an "employer."  See Moss v. W & A Cleaners, 111 F. Supp. 2d 1181, 1187 (M.D. Ala. 2000) ("individual employees can be held liable for discrimination under § 1981") (citing Leige v. Capitol Chevrolet, Inc., 895 F.Supp. 289, 293 (M.D.Ala. 1995); Perrymond v. Lockheed Martin Corp., 2009 WL 2474226, at *6 (N.D. Ga. Aug. 12, 2009) ("Such an individual will be liable under § 1981 if he is personally involved in a racially discriminatory employment decision") (citing Burstein v. Emtel, Inc., 137 Fed. Appx. 205, 208 (11th Cir. 2005) (finding individual was not liable under § 1981 where he did not participate in decision); Crawley v. Pakert–Johnson Co., 2008 WL 4793650, *1 (M.D.Fla. Nov. 3, 2008) ("A claim for individual liability under Section 1981 requires some affirmative link to causally connect the actor with the discriminatory action.")).

The Amended Complaint in this case fails to allege any facts showing that Mike McMillan, individually, participated in or was even aware of Brasher's discriminatory scheme.  McMillan cannot be liable simply because he is the sole owner of the corporate employer of Brasher, absent a factual allegation that he knew of, allowed, or facilitated the discriminatory scheme.  Although the employer corporation may be vicariously liable for the actions of an employee, such liability does not extend to the owners of the corporation without separate allegations that

the owner participated directly in the discriminatory action or ratified such action. Because that is not alleged here, Mike McMillan individually is entitled to dismissal of this claim against him personally. The plaintiff has not alleged any wrongdoing by Mike McMillan, individually, or even that he was aware of Brasher's wrongdoing. Accordingly, Mike McMillan's Motion to Dismiss the plaintiff's § 1981 claim against him is due to be granted.

## II.  *Conspiracy*

Count Two of the Amended Complaint alleges that "[t]he Defendants have contrived, combined, federated, and conspired amongst themselves to do the acts herein described in violation of state and federal law." (Doc. 24, ¶ 26). Although this seems to allege a free-standing claim for civil conspiracy, it appears to allege that defendants conspired to cause the claims alleged in every other count of the Amended Complaint. Even so, Counts Three and Five allege expressly that the defendants engaged, respectively, in a civil RICO conspiracy and a § 1985 conspiracy to deprive them of their civil rights. While Count Four does not explicitly refer to a conspiracy, it does allege that the defendants "collectively" required African-American truckers to pay a kickback not required from white truckers, in violation of the Equal Protection clause of the Fourteenth Amendment. None of the remaining counts, alleging claims under State law, makes any explicit reference to a conspiracy among the defendants. Nevertheless, Count Two seems

to incorporate into its broad conspiracy theory all of the claims alleged elsewhere in the Amended Complaint.

Defendants McMillan and McMillan Trucking assert that the plaintiffs have failed to state sufficient facts to support a claim of either civil or criminal conspiracy against them.  Defendant Brasher does not address the conspiracy claim in his Motion to Dismiss other than the general statement that all of the plaintiffs' claims should be dismissed pursuant to Rule 12(b)(6).[3]

The plaintiffs argue in response to the motions to dismiss that all of the defendants "conspired to carry out their illegal scheme demanding $100 in secret cash kickbacks per load from Plaintiffs and other African American drivers in order to secure loads to haul for Defendants.  Defendant Brasher made those demands and pocketed that money acting as their agent and employee while they were in contractual relationships with all the parties involved."  (Doc. 35, p. 11). The plaintiffs have not, however, alleged any facts showing that defendants Mike McMillan or McMillan Trucking (or any representative or supervisor thereof, other than Brasher) had knowledge of or participated in Brasher's kickback scheme or

---

[3]    To the extent Brasher intends his motion to dismiss to apply to the plaintiffs' conspiracy claims, the Motion is DENIED.  As discussed *infra*, the plaintiffs allege that Brasher indicated Davis had given him the idea for the scheme and that the plaintiffs received no more work after communicating with Davis regarding Brasher's actions.  Accordingly, it is at least plausible that a conspiracy existed between Brasher and Davis.  Neither Davis nor Chip Mill has filed a motion to dismiss, and the court has no occasion to consider the sufficiency of the factual allegations of conspiracy involving them.

otherwise ratified it.   Indeed, plaintiffs expressly allege that Brasher pressured them to make "secret" payments to him.   (See Amended Complaint, doc. 24, ¶ 11). Allegations of conspiracy must be supported by "particularized allegations that a conspiracy exists."   See Phillips v. Mashburn, 746 F.2d 782, 784 (11th Cir.1984); Kivisto v. Miller, Canfield, Paddock & Stone, PLC, 413 F. App'x 136, 139 (11th Cir. 2011).   This includes a factual allegation plausibly showing a "meeting of the mind" between the purported conspirators to carry out the object of the conspiracy. There simply is no such factual allegation made in this case that Brasher, who was receiving "secret" kickback payments, reached a meeting of minds with Mike McMillan or McMillan Trucking to do so.   Plaintiffs' allegations of a conspiracy between Brasher and McMillan and McMillan Trucking are insufficient "labels and conclusions" and, therefore, cannot withstand a motion dismiss.   See Iqbal, 129 S. Ct. at 1949.

Further, insofar as plaintiffs contend that Brasher's position as an employee of McMillan Trucking shows a conspiracy between him and McMillan Trucking, the intracorporate conspiracy doctrine bars such a finding.   "The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. Simply put, under the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their

employment, cannot conspire among themselves." McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 (11th Cir. 2000).[4]   The plaintiffs' allegations of conspiracy against McMillan or McMillan Trucking amount to nothing more than an attempt to allege a conspiracy among the employees of a corporation and the corporation itself, which is barred by the intracorporate conspiracy doctrine.

Because the plaintiff has not set forth facts to make a conspiracy claim plausible as required by Twombly and Iqbal, the motion to dismiss plaintiffs' conspiracy claims against McMillan and McMillan Trucking are due to be granted.

## III.   Racketeering

The Racketeer Influenced and Corrupt Organizations Act ("RICO") "imposes criminal and civil liability upon persons who engage in certain 'prohibited activities,' each of which is defined to include, as a necessary element, proof of a 'pattern of racketeering activity.'"   H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 229, 109 S. Ct. 2893, 2895, 106 L. Ed. 2d 195 (1989).  Racketeering activity includes "any act or threat involving specified state-

---

[4]  The Eleventh Circuit has held that the doctrine does not apply to criminal conspiracies and, therefore, does not bar civil actions for conspiracy under 42 U.S.C. § 1985(2), alleging a criminal conspiracy to intimidate a federal witness.  Plaintiffs here, however, do not allege a criminal conspiracy, but only a conspiracy to deprive them of the equal protection of the law to contract without racial discrimination, under the first clause of § 1985(3).  The doctrine does apply to conspiracies under § 1985(3).  "[I]n Dickerson v. Alachua County Comm'n, 200 F.3d 761 (11th Cir. 2000), a panel of this Court followed Chambliss [v. Foote, 562 F.2d 1015 (5th Cir.1977) (per curiam)] and held that the intracorporate conspiracy doctrine barred plaintiff's § 1985(3) claim alleging a conspiracy among employees of the same public entity to deprive him of his civil rights."  McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1038 (11th Cir. 2000).

law crimes, any 'act' indictable under specified federal statutes, and certain federal

'offenses.'"   Id.   The plaintiffs allege that defendants engaged in the following

ongoing racketeering activities: seeking and accepting kickbacks from the

plaintiffs and others, wire fraud, and extortion.  (Doc. 24, ¶ 29).  The plaintiffs also

accuse the defendants of "conspiring to violate state and federal law, engaging in

an ongoing illegal enterprise, . . . and engaging in an ongoing pattern of actions in

violation of Plaintiffs' legal rights."  (Id.)

The Eleventh Circuit sets out the elements of a cognizable RICO claim in

Williams v. Mohawk Industries, Inc., 465 F.3d 1277 (11th Cir. 2006):

> Pursuant to 18 U.S.C. § 1962(c), it is illegal "for any person employed
> by or associated with any enterprise engaged in, or the activities of
> which affect, interstate or foreign commerce, to conduct or participate,
> directly or indirectly, in the conduct of such enterprise's affairs
> through a pattern of racketeering activity. . . ." 18 U.S.C. § 1962(c).
> Thus, in order to establish a federal civil RICO violation under
> § 1962(c), the plaintiffs "must satisfy four elements of proof:
> '(1) conduct (2) of an enterprise (3) through a pattern (4) of
> racketeering activity.'"  Jones v. Childers, 18 F.3d 899, 910 (11th Cir.
> 1994) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105
> S. Ct. 3275, 3285, 87 L. Ed. 2d 346 (1985)).  These requirements
> apply whether the RICO claim is civil or criminal in nature.
>
> In civil cases, however, RICO plaintiffs must also satisfy the
> requirements of 18 U.S.C. § 1964(c).  Section 1964(c) states that
> "[a]ny person injured in his business or property by reason of"
> RICO's substantive provisions has the right to "recover threefold the
> damages he sustains. . . ."  18 U.S.C. § 1964(c).  Thus, under
> § 1964(c), civil RICO claimants, such as the plaintiffs here, must

show (1) the requisite injury to "business or property," and (2) that such injury was "by reason of" the substantive RICO violation.

Id. at 1282-1283.

The plaintiffs must first allege sufficient facts to show a plausible RICO enterprise. "In defining 'enterprise', Congress made clear that the statute extended beyond conventional business organizations to reach '*any* . . . group of individuals' whose association, however loose or informal, furnishes a vehicle for the commission of two or more predicate crimes. . . ." U.S. v. Hewes, 729 F.2d 1302, 1310 (1984), quoting United States v. Elliott, 571 F.2d 880, 898 (5th Cir. 1978), *cert denied*., 439 U.S. 953, 99 S. Ct. 349, 58 L. Ed. 2d 344 (1978).[5]   In other words, "a RICO enterprise exists where a group of persons associates, formally or informally, *with the purpose* of conducting illegal activity." Id. at 1311 (emphasis added). Accordingly, the plaintiffs not only must plausibly allege that more than one person engaged in predicate crimes falling within the RICO statute, but that the defendants associated with the purpose of conducting such illegal activities. Id., see also U.S. v. Goldin Industries, Inc., 219 F.3d 1271, 1275 (11th Cir. 2000).

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981)(*en banc*), the Eleventh Circuit Court of Appeals adopted as precedent decision of the former Fifth Circuit rendered prior to October 1, 1981.

The plaintiffs have asserted, and the defendants do not deny, that defendant Brasher, at the relevant time, was an employee of McMillan Trucking and that, as part of his employment, Brasher assigned loads for truckers to haul from the Chip Mill.  (Doc. 24, ¶ 10).  Brasher attempted to extort kickbacks from the plaintiffs to secure loads, and Brasher called the plaintiffs on the phone to initiate the deal, constituting wire fraud.[6]  The plaintiffs also state that "Jamie Brasher said that Brett Davis gave him the idea for the secret cash kickback of $100 per load for certain drivers."  (Doc. 24, ¶ 12).  Finally, the plaintiffs allege they met with Davis about the issue, but no recourse was taken against Brasher and, after they complained, the plaintiffs were not assigned any further loads from the Chip Mill.  (Doc. 24, ¶¶ 14, 16).  None of the facts set out by the plaintiffs even plausibly indicate that defendants Mike McMillan or McMillan Trucking were involved or even aware of Brasher's "secret" activities.

Because there is no factual allegation that McMillan or McMillan Trucking knew of, participated in, or ratified Brasher's kickback scheme, the Amended Complaint fails to allege a RICO claim against them.  "Section 1962(d) of the RICO statutes make it illegal for anyone to conspire to violate one of the substantive provisions of RICO, including § 1962(c). 'A plaintiff can establish a

---

[6]   The plaintiffs do not assert that Brasher discussed the kickback over the phone, but that he called the plaintiffs to come to the Chip Mill and "get their loads to haul," at which time he told them that they would be required to pay a $100 "fee" to be assigned a load.

RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts.'" <u>Kivisto v. Miller, Canfield, Paddock & Stone, PLC</u>, 413 F. App'x 136, 139 (11th Cir. 2011) (internal citations omitted), quoting <u>American Dental Association v. Cigna Corp.</u>, 605 F.3d 1283, 1288, 1293 (11th Cir.2010).  Plaintiffs allege no facts showing that McMillan or McMillan Trucking agreed to the "overall objective" of Brasher extorting kickbacks from African-American truckers or to "commit two predicate acts" in furtherance of the alleged conspiracy.

The plaintiffs argue that Brasher's actions benefited all of the defendants because having a McMillan Trucking employee determine load assignments for the Chip Mill allowed the Chip Mill to forego hiring an employee to determine load assignments.  (<u>Id.</u> at ¶ 20).  This explains how the business model is beneficial, generally, but it fails to allege how Brasher's particular *illegal activity* benefitted any defendant other than Brasher himself.  The plaintiffs have failed to allege a RICO enterprise, because they failed to allege that anyone other than Brasher himself acted with the intent of benefitting from illegal activity.  To constitute an *enterprise*, at least two people must associate with the purpose of conducting illegal activity.  The plaintiffs have failed to state such a claim.  While the plaintiffs claim that Davis gave Brasher the idea for the illegal activity and did

nothing to reprimand Brasher once the plaintiffs brought the activity to Davis' attention, mere "ratification" of Brasher's actions is not sufficient to show purpose on the part of Davis.[7]   Absent some other person or entity acting in concert with Brasher, there was no RICO enterprise, and, thus, even Brasher cannot be liable under the Act.

Because the plaintiffs have failed to put forth facts asserting that defendants McMillan or McMillan Trucking were involved in any enterprise for the purpose of conducting illegal activity, the motion to dismiss by those defendants (doc. 30) is due to be granted.   Likewise, Brasher's motion to dismiss also is due to be granted as to the plaintiffs' RICO claims because there .

## IV.   *Violation of Civil Rights*

In Count IV of the Amended Complaint, the plaintiffs argue that their civil rights were violated because they "were discriminated against on the basis of race" and that the discrimination violated "the Equal Protection clause of the Fourteenth Amendment to the United States Constitution and federal statutory law including

---

[7]   "We decline to hold that even absent a benefit, the NMDU can be held liable for acquiescing in the fraudulent scheme.  Although agency law does recognize that failure to repudiate can act as an affirmance of an unauthorized transaction, *see* Restatement (Second) of Agency § 94 (1958), we do not think that this doctrine should be used to undermine the federal policy of punishing only culpable RICO parties. . . . While there might be some circumstance when multiple officers of a principal are so involved in a RICO enterprise and in attempts to cover up the principal's involvement that, even if the principal received no benefit from the conspiracy, it can be held liable through acquiescence, we do not think that the instant facts warrant such a conclusion."  Volmar Distributors, Inc. v. New York Post Co., Inc., 899 F. Supp. 1187, 1198 n. 8 (S.D.N.Y. 1995).

42 U.S.C. § 1981." (Doc. 24, ¶ 38). The alleged violation of § 1981 already was discussed herein, and to that extent, Count IV is redundant of the § 1981 claim in Count One. The court is not required to guess what other "federal statutory law" the plaintiffs allege was violated. Accordingly, the court will discuss Count IV only as it pertains to the alleged violation of the plaintiffs' Fourteenth Amendment equal protection rights. Neither of the motions to dismiss directly addresses the plaintiffs' Fourteenth Amendment claims, beyond asserting that all of the plaintiffs' claims should be dismissed.

The plaintiffs have not asserted anywhere in the Amended Complaint that the actions at issue in the above-styled case were anything other than purely private acts. "Since the decision of [the Supreme Court of the United States] in the Civil Rights Cases, 1883, 109 U.S. 3, 3 S. Ct. 18, 27 L. Ed. 835, the principle has become firmly embedded in our constitutional law that the action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the States. That Amendment erects no shield against merely private conduct, however discriminatory or wrongful." Shelley v. Kraemer, 334 U.S. 1, 13, 68 S. Ct. 836, 842, 92 L. Ed. 1161 (1948). Accordingly, to the extent that the plaintiffs attempt to assert claims under the Fourteenth Amendment equal protection clause, such claims are due to be dismissed.

## V.   42 U.S.C. § 1985

Defendants Brasher, McMillan, and McMillan Trucking move to dismiss the plaintiffs' claim that the defendants conspired against them in violation of 42 U.S.C. § 1985, which makes it unlawful for "two or more persons in any State or Territory to conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."  42 U.S.C. § 1985(3).  Similarly to the plaintiffs in the instant case, the plaintiff in Jimenez v. Wellstar Health System, claimed that his employers had "violated 42 U.S.C. § 1985(3) by conspiring to deprive him of his right to contract, his right to practice his profession, and his rights under § 1981." 596 F.3d 1304, 1311-12 (11th Cir. 2010).  The Eleventh Circuit determined that the plaintiff in Jimenez was unable to support a claim under § 1985(3), stating:

> To state a claim under § 1985(3), a plaintiff must allege (1) defendants engaged in a conspiracy; (2) the conspiracy's purpose was to directly or indirectly deprive a protected person or class the equal protection of the laws, or equal privileges and immunities under the laws; (3) a conspirator committed an act to further the conspiracy; and (4) as a result, the plaintiff suffered injury to either his person or his property, or was deprived of a right or privilege of a citizen of the United States.  Johnson v. City of Fort Lauderdale, 126 F.3d 1372, 1379 (11th Cir. 1997).  When the alleged § 1985(3) conspirators are private actors, the plaintiff must demonstrate that the conspiracy was aimed at rights constitutionally protected against private impairment. Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 274, 113 S.

Ct. 753, 763, 122 L. Ed. 2d 34 (1993); Park v. City of Atlanta, 120 F.2d 1157, 1162 (11th Cir. 1997).  These rights include only select "serious constitutional right[s]."  Cook v. Randolph County, 573 F.3d 1143, 1157 (11th Cir. 2009)(quotation omitted).

The only rights the Supreme Court has expressly declared enforceable against private conspirators under § 1985(3) are the right to interstate travel and the right against involuntary servitude.  See Bray, 506 U.S. at 278, 113 S. Ct. at 764.  Conversely the Supreme Court has declared the freedom of speech, id., and the rights protected under Title VII, Great Am. Fed. Sav. & Loan Ass'n v. Novotny, 442 U.S. 366, 378, 99 S. Ct. 2345, 2352, 60 L. Ed. 2d 957 (1979), insufficient to form the basis of § 1985(3) actions against private conspirators.  Other than the few rights the Supreme Court has addressed, district and circuit courts differ as to which rights warrant § 1985(3) protection.

This Circuit has routinely and systematically grouped Title VII and § 1981 claims for analytic purposes.  See, e.g., Standard v. A.B.E.L. Servs., 161 F.3d 1318, 1330 (11th Cir. 1998) (analyzing Title VII and § 1981 claims concurrently because of their similarity).   Thus, because conspiracies to violate rights protected by Title VII cannot form the basis of § 1985(3) suits, Novotny, 442 U.S. at 378, 99 S. Ct. at 2352, and because the Supreme Court has been conservative in designating which rights litigants may enforce against private actors under § 1985(3), we hold conspiracies to violated rights protected under § 1981 are likewise insufficient to form the basis of a §1985(3) claim….  The district court, therefore, did not err in ruling Jimenez failed to state a claim under § 1985(3).

Jimenez, 596 F.3d 1304, 1312.  This holding makes clear that allegations of a conspiracy to violate the equal protection rights of a person to contract or own property are not sufficient to state a claim for violation of § 1985(3).  In the instant case, the plaintiffs do not claim that the defendants violated or attempted to violate their right to interstate travel or right against involuntary servitude.  Any claims

asserted by the plaintiffs that the defendants violated 42 U.S.C. § 1981 cannot sustain the plaintiffs' § 1985(3) claims, as stated in <u>Jimenez</u>.

Moreover, as already discussed above, the factual allegations of the Amended Complaint fail to show any basis for finding that Mike McMillan and McMillan Trucking participated in a conspiracy to deprive the plaintiffs of anything.  Plaintiffs have not alleged particularized facts allowing even a plausible inference that McMillan and McMillan Trucking participated in or were even aware of Brasher's admittedly "secret" scheme to extort kickbacks from African-American truckers.  Because the plaintiffs have failed to adequately state a claim under § 1985, the defendants' motions to dismiss the plaintiffs' § 1985 claims are due to be granted.

**State Law Claims**

*VI.   Unjust Enrichment*

The plaintiffs allege that the defendants were unjustly enriched by Brasher's kickback scheme.  Because plaintiff Jones asserts in the Amended Complaint that he never paid Brasher the $100 kickback, he cannot assert that any defendant was "enriched" at his expense.  Therefore, the motions to dismiss plaintiff Jones's state law claim of unjust enrichment are due to be granted.  Plaintiff Jackson states that he made one $100 payment to Brasher, but he does not allege any facts supporting

the claim that defendants McMillan or McMillan Trucking received any benefit from Brasher's kickback scheme.[8]   Accordingly, defendants McMillan and McMillan Trucking's motion to dismiss (doc. 30) is due to be granted as it pertains also to plaintiff Jackson's state law claim of unjust enrichment.

Defendant Brasher argues in his motion to dismiss that the plaintiffs' allegations do not allege the elements for unjust enrichment under Alabama law. However, the standard cited by Brasher is not the only standard for assessing an unjust enrichment claim under Alabama law.  Brasher cites Portofino Seaport Vill., LLC v. Welch, 4 So. 3d 1095, 1098 (Ala. 2008) which states that "[t]o prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation."  (citations omitted).  As Brasher notes, he did not fail to pay Jackson for a retained benefit; the only time Jackson paid the $100 kickback, he received a load to haul.  However, more importantly, Alabama case law also notes that "[o]ne is unjustly enriched if his retention of a benefit would be unjust.  Retention of a benefit is unjust if (1) the donor of the benefit . . . acted under a mistake of fact or in misreliance on a right or

---

[8]    As discussed *infra*, the plaintiffs have set out how Brasher's employment arrangement benefited all defendants, but the benefit of the employment arrangement does not create enrichment from Brasher's illegal activity.  The employment benefit existed separate and apart from Brasher's kickback scheme.  Importantly, there is no allegation that anyone other than Brasher received any kickback proceeds.

duty, or (2) the recipient of the benefit . . . engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship." Jordan v. Mitchell, 705 So. 2d 453, 458 (Ala. Civ. App. 1997) (internal citations omitted). Both forms of unjust enrichment are recognized as valid in Matador Holdings, Inc. v. HoPo Realty Investments, L.L.C., 77 So. 3d 139, 145-146 (Ala. 2011).

Plaintiff Jackson alleges that, on one occasion, he paid $100 in a "secret kickback scheme" to have Brasher assign him a load to haul to Beaumont, Texas, and that Brasher told him that, if he failed to pay, he would "only get loads if there were loads left after those who paid the $100 secret cash per load got their loads." (Doc. 24, ¶ 11). Based on the Amended Complaint, plaintiff Jackson has alleged sufficient facts to support a claim that Brasher "engaged in some unconscionable conduct" to obtain $100 from Jackson, causing Brasher to be unjustly enriched by that amount. Accordingly, Brasher's motion to dismiss plaintiff Jackson's claim of unjust enrichment is due to be denied.

## VII.   *Fraud and Deceit*

In the Amended Complaint, the plaintiffs allege that all of the defendants committed acts of fraud and deceit "in violation of Alabama law, including Alabama Code §§ 6-5-100 through 104." (Doc. 24, ¶ 49). The plaintiffs contend in response to defendant Brasher's motion to dismiss that "[i]n July and August of 2014, Defendant Brasher falsely [told the plaintiffs] that a monetary kick back was

required to obtain loads to haul for the Defendants.  Brasher said that they could get left over [loads] but knew that no loads would be left over.  He intentionally did not inform the Plaintiffs that this 'requirement' was only for Black drivers and not for White drivers.  In July and August of 2014, Brasher called Plaintiffs on their phones to summon them to get loads to haul.  Once the Plaintiffs traveled to Defendant Brasher, he did not assign them loads as he indicated he would on the phone.  Only once they made the trip to see him to get a load did Brasher add the 'requirement' of [a] $100 kick back in order for them to haul a load."  (Doc. 34, p 19).

The Alabama Code defines fraud as "[m]isrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted upon by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."  Ala. Code § 6-5-101 (1975).  Fraud "accompanied with damage to the party defrauded" provides a civil right of action.  Ala. Code § 6-5-100 (1975).  The Alabama Code defines fraudulent deceit as:

(a) One who willfully deceives another with intent to induce him to alter his position to his injury or risk is liable for any damage which he thereby suffers.

(b) A deceit within the meaning of this section is either:

(1) The suggestion as a fact of that which is not true by one who does not believe it to be true;

(2) The assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true;

(3) The suppression of a fact by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of that fact; or

(4) A promise made without any intention of performing it.

Ala. Code § 6-5-104 (1975).  A right of action arises under this code section if there is "[w]illful misrepresentation of a material fact made to induce another to act, and upon which he does act to his injury."  Ala. Code § 6-5-103 (1975). "Mere concealment of such a fact, unless done in such a manner as to deceive and mislead, will not support an action," and "knowledge of a falsehood constitutes an essential element."  Id.

Although the plaintiffs allege the fraud and deceit claim against all defendants, the only behavior specifically alleged in the Amended Complaint to be fraudulent was by Brasher.[9]  The plaintiffs allege that Brasher "falsely alleged that a monetary kick back was required to obtain loads to haul for the Defendants." (Doc. 34, p. 19).  The plaintiffs do not allege that Brasher told them the $100

---

[9]   The plaintiffs do state in the Amended Complaint and the response to defendant Brasher's motion to dismiss that defendant Davis, owner of defendant Scott Davis Chip Mill, falsely told the plaintiffs that he would address Brasher's activity.  However, defendants Davis and Scott Davis Chip Mill filed an Answer (doc. 31) to the Amended Complaint and, therefore, the plaintiffs' claims against those defendants are not currently at issue.

payment was a company policy or required by anyone other than Brasher himself. In fact, the pleadings indicate that the plaintiffs knew the $100 fee was not company policy because they complained to Davis regarding the issue.  (Doc. 24, ¶ 14).  The plaintiffs also call such payment a "secret," indicating their awareness that the payment was required only by Brasher himself and not by Chip Mill or McMillan Trucking.  (Id. at ¶ 11).  The fact that Brasher required the payment before assigning a load was, while corrupt, true; there was no false statement of fact or attempt to deceive.  Plaintiffs were not misled about the purpose or effect of the $100 payment.  Although the demand for the payment may be many things, it simply was not a fraud under any definition of the tort cognizable in Alabama.

The plaintiffs further allege that Brasher "intentionally did not inform the Plaintiffs that [the payment] was only for Black drivers and not for White drivers." (Doc. 34, p. 19).  The plaintiffs do not allege, however, that Brasher had any duty to disclose such information and, therefore, a suppression claim cannot stand.  Ala. Code §§ 6-5-102, 6-5-104(b)(3) (1975).  The plaintiffs also do not indicate what damage they suffered from Brasher's suppression of that fact.  The damage to the plaintiffs was the same whether the kickback was required from all drivers or was racially discriminatory.  If Brasher had candidly disclosed to them that he required the payment only from African-American drivers, it would have made no difference in plaintiffs' ability or opportunity to secure loads to haul.  Further, the

pleadings clearly suggest that the plaintiffs *did* know about the racial disparity of the kickback scheme, because the Amended Complaint states that the plaintiffs met with Davis to "complain about the shakedown of themselves and other African American drivers." (Doc. 24, ¶ 14).

Plaintiffs also argue that Brasher called them to come to the Chip Mill plant to get a load without telling them they had to pay $100 to get a load. This, they say, was a fraudulent suppression because they changed their position by traveling to the plant without knowing the condition attached to getting a load. This, however, also fails to state a fraud. First, Brasher was under no duty to disclose to the plaintiffs his extortionate scheme at the time he called them to come to the plant, nor was he obligated to outline for them all of the conditions, legal and illegal, that could be attached to the assignment of a load to them.[10]  They do not allege any fiduciary relationship or other circumstances that imposed a duty to disclose, so the mere failure of Brasher to tell them about the $100 kickback before they came to the plant is not a cognizable suppression. Second, it also was not deceit. There is no allegation that, when he called them, Brasher had no intention

---

[10]   Plaintiffs' position essentially contends that, unless Brasher fully disclosed to them *every* condition attached to a load assignment, whether legal or illegal, his summoning of them to the plant was an actionable suppression.  Certainly shippers may impose commercially reasonable conditions to the assignment of loads to truckers without having to disclose them to the truckers before they even arrive to pick up the load.  The court is not implying that Brasher's kickback scheme was a commercially reasonable precondition to assigning a load to the plaintiffs, but only that the essence of the argument applies to *all* preconditions, legal as well as illegal.

of assigning them a load if they complied with his conditions.   A deceit occurs only if there are facts showing that Brasher never had any intention of assigning them a load, even if they were willing to pay the kickback.   This is belied by plaintiff Jackson's allegation that, on the one occasion he acquiesced and paid the kickback, he was assigned a load.   For all that appears in the Amended Complaint, Brasher's intent was to assign loads to the plaintiffs if they were willing to pay the kickback.   Thus, his call for them to come to the plant, at the time it was made, was not a deceit, made by Brasher knowing it to be false.   Third, when Brasher called the plaintiffs to come to the plant, absent a deceit as described above, his statement to them that they would be assigned a load when they arrived was a prediction concerning a future event, not a false statement of a *current* fact.   Except for intentional deceits, Alabama law does not recognize fraud with respect to a statement concerning a future event.   As the Alabama Supreme Court has stated:

> This Court has stated that "[a] mere statement of opinion or prediction as to events to occur in the future is not a statement of a 'material fact' upon which individuals have the right to rely and, therefore, it will not support a fraud claim." Crowne Invs., Inc. v. Bryant, 638 So.2d 873, 877 (Ala. 1994).  "Where the representation of an opinion is involved, a person must prove not only that there was an intent to deceive, but also that his reliance was reasonable." Reynolds v. Mitchell, 529 So.2d 227, 231 (Ala. 1988) (citing Bedwell Lumber, Inc. v. T & T Corp., 386 So.2d 413 (Ala. 1980)).

McCutchen Co. v. Media Gen., Inc., 988 So. 2d 998, 1002 (Ala. 2008).  Similarly,

the court has stated:

> To establish a cause of action for fraud, a plaintiff must prove that the defendant knowingly made a false representation of a material, existing fact on which the plaintiff relied to his detriment.   Parker v. Thyssen Mining Construction, Inc., 428 So.2d 615 (Ala. 1983).  Woodard v. Woodard, 413 So.2d 1060 (Ala. 1982).   In cases of misrepresentation of existing facts, a reckless misrepresentation might constitute fraud.  The rule is different where the alleged representation relates to some future event, such as the promises which Westinghouse allegedly made.  In such a situation, the law requires, in addition to the normal elements of falsity, reliance and damage, proof that, at the time the statement or promise about the future was made, there was an actual fraudulent intent not to perform the act promised and an intent to deceive the plaintiff.   Birmingham Broadcasting Co. v. Bell, 259 Ala. 656, 68 So.2d 314 (1953); accord, Robinson v. Allstate Insurance Company, 399 So.2d 288 (Ala.1981).

Kennedy Elec. Co. v. Moore-Handley, Inc., 437 So. 2d 76, 80 (Ala. 1983).  For the

reasons already explained, the plaintiffs have alleged no facts showing an

intentional deceit by Brasher when he summoned them to come to the plant, and

his prediction about future events cannot form the basis for a fraud claim.

Finally, the plaintiffs allege that "Brasher said that [the plaintiffs] could get

left over [loads] but knew that no loads would be left over."  (Doc. 34, p. 19).  The

plaintiffs argue that they relied upon Brasher's statement to their detriment by

waiting for "leftover" loads that were never assigned.  Aside from the concerns

that this was a statement related to a future event (i.e., assignment of load if any

were left over after all the kickbacks were paid), plaintiffs have failed to allege any injury or a detriment from the statement. Even assuming that Brasher's statement that they could get leftover loads was knowingly false and deceitful, they do not allege any facts showing they lost other jobs or forwent other opportunities while waiting for leftover loads. Absent a factual allegation showing that plaintiffs were injured by waiting for a load that never came, they have not alleged an element of fraud.[11] Accordingly, Brasher's Motion to Dismiss regarding the plaintiffs' claims of fraud and deceit is due to be granted.

The plaintiffs assert their claim of fraud and deceit against all defendants, but do not set out any facts supporting such a claim against McMillan or McMillan Trucking. The plaintiffs entire argument against the McMillan defendants appears to be based upon the fact that defendant Brasher was, at the relevant time, an employee of McMillan Trucking. This basis alone is not enough to hold the McMillan defendants liable for Brasher's actions. Under Alabama law, "[a]n employer is liable for the intentional torts of its employee if: (1) the employee's acts are committed in furtherance of the business of the employer; (2) the employee's acts are within the line and scope of his employment; or (3) the employer participated in, authorized, or ratified the tortious acts." Ex parte Atmore

---

[11]   Although the court will dismiss plaintiffs' fraud claims by this Order, they are given fifteen (15) days' leave to amend the Amended Complaint to allege such facts, if they can do so consistent with Rule 11.

Community Hosp., 719 So. 2d 1190, 1194 (Ala. 1998), citing Potts v. BE&K Construction Co., 604 So.2d 398, 400 (Ala.1992).  For an act to be within the "line and scope" of the employee's employment, the acts must be "'so closely connected with what the servant is employed to do and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment.'"  Id., quoting Prosser & Keeton, The Law of Torts 503 (5th ed.1984).

For the reasons already discussed above, the plaintiffs have not alleged any fact showing plausibly that McMillan and McMillan Trucking knew of, authorized, or ratified Brasher's "secret" kickback payments.  Certainly Brasher's receipt of the kickback payment did not benefit or further the business interests of McMillan or McMillan Trucking.  The payments benefitted only Brasher, and were received secretly by him for that sole purpose.  Although it is true that Brasher used his position as a McMillan Trucking employee to extract the payments, doing so was not "so closely connected with what [Brasher was] employed to do and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment."  The fact that Brasher received the payments secretly makes clear that McMillan Trucking had not authorized him to request them from truckers of any race.  The kickbacks to Brasher simply were not what he "was employed to do" or incidental to his

legitimate employment objectives.[12]   Absent some factual allegations that McMillan Trucking and Mike McMillan knew what Brasher was doing, they are not vicariously liable for his misconduct.

Accordingly, McMillan Trucking's and Mike McMillan's motion to dismiss the plaintiffs' claims for fraud and deceit is due to be granted.

### VIII.  Violation of Article 1, Section 1 of the Constitution of Alabama

The plaintiffs have stipulated that "because the Defendants are not state actors, existing law does not support Count Eight of the Plaintiffs Amended Complaint." (Doc. 34, p. 20; Doc. 35, p. 27).  Accordingly, the motions to dismiss (docs. 28, 30) are due to be granted as to the plaintiff's count VIII, for violation of Article 1, Section 1 of the Constitution of Alabama.

### CONCLUSION

For the reasons set forth herein, it is ORDERED and ADJUDGED that the motion to dismiss by defendant Brasher (doc. 28) be and hereby is GRANTED IN PART and DENIED IN PART, as follows:

---

[12]   The court believes it is important to note the differences between the wrongs sought to be prevented respectively by § 1981 and Alabama fraud law.  The essential wrong targeted by § 1981 is racial discrimination, not the fairness or efficacy of contracts.  Alabama fraud law seeks to bring truth and fair-dealing to commercial activity, and makes no attempt to proscribe racial or other forms of discrimination.  These different purposes further underscore the rationales for different approaches to the "line and scope of employment" concept involved in both.

1.   Brasher's motion is GRANTED in full with respect to Count Three (Racketeering); Count Four (Violation of Civil Rights); Count Five (Conspiracy to Deprive Plaintiffs of Civil Rights); Count Seven (Fraud and Deceit); and Count Eight (Violation of Article 1, Section 1 of the Constitution of Alabama), and the claims in these counts are DISMISSED as to Brasher.

2.   Brasher's motion is GRANTED as to plaintiff Jones's claim in Count Six for Unjust Enrichment, but DENIED as to plaintiff Jackson's claim in Count Six.

3.   Brasher's motion also is DENIED as to plaintiffs' claims in Count One for violation of 42 U.S.C. § 1981, prohibiting racial discrimination in contract.

It is FURTHER ORDERED that the motion to dismiss on behalf of defendant Mike McMillan, individually (doc. 30), is GRANTED in full, and all claims against defendant Mike McMillan individually are DISMISSED.

It is ORDERED that the motion to dismiss on behalf of defendant McMillan Trucking (doc. 30) is DENIED as to the plaintiffs' Count One for violation of 42 U.S.C. § 1981, prohibiting racial discrimination in contract, but GRANTED as to all other counts of the Amended Complaint.  Counts Two through Eight are DISMISSED as to McMillan Trucking.

Accordingly, the claims remaining against defendant Brasher in this action are (1) plaintiffs' claims that Brasher violated § 1981 and plaintiff Jackson's claim under Alabama state law for unjust enrichment.  The only claims remaining against

defendant McMillan Trucking are the plaintiffs' § 1981 claims for racial discrimination in the right to contract.  No claims remain against defendant Mike McMillan, individually.  All claims against defendants Brett Davis and Scott Davis Chip Mill remain pending, as those claims are not addressed in this Order.

To the extent they can do so consistent with Rule 11, the plaintiffs are given leave to amend the Amended Complaint within fifteen (15) days to supply any additional factual or missing allegations necessary to state claims in this action.

DONE this 21st day of January, 2016.

_____

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE