FILED

2016 Jun-30  AM 08:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | |
|---|---|
| CHRISTOPHER JONES, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 7:15-cv-00661-TMP |
| ) | |
| SCOTT DAVIS CHIP MILL, ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION and ORDER**

The court has before it the plaintiffs' motion for clarification or reconsideration (Doc. 49), relating to the court's order to strike the plaintiffs' second amended complaint (Doc. 45). As explained below, the motion is due to be granted in part as set out herein.

As a result of the court's Memorandum Opinion and Order dated January 21, 2016 (Doc. 42), certain defendants and claims were dismissed. Dismissed were:

1. Count Three (Racketeering), Count Four (Violation of Civil Rights), Count Five (Conspiracy to Deprive Plaintiffs of Civil Rights), Count Seven (Fraud and Deceit), and Count Eight (Violation of Article 1, Section 1 of the Constitution of Alabama) as to defendant Brasher;

2. Plaintiff Jones's Count Six against Brasher;

3.  All of plaintiffs' claims against Mike McMillan individually; and

4.  Counts Two through Eight as to McMillan Trucking.

Remaining as claims in the action were the following:

1.   All eight counts against defendants Brett Davis and Scott Davis Chip Mill, who did not file a motion to dismiss;

2.  Count One (42 U.S.C. § 1981) against McMillan Trucking;

3.  Count One (42 U.S.C. § 1981) and plaintiff Jackson's claim in Count Six (Unjust Enrichment) against Brasher.

In doing so, the court granted the plaintiffs leave to file an amended complaint within fifteen (15) days "to supply any additional factual or missing allegations necessary to state claims in this action." (Doc. 42, p. 37). Plaintiffs did so, filing a second amended complaint (Doc. 45) on February 4, 2016. The court mistakenly struck the second amended complaint as being filed without leave. It was a mistake, as clearly the court had granted leave to file the second amended complaint in the January 21, 2016 Memorandum Opinion and Order.

To correct that mistake, the motion for clarification is GRANTED IN PART to reinstate the filing of the second amended complaint, subject however to the court's review of whether the second amended complaint corrects all of the deficiencies previously identified in the motions to the dismiss and the January 21 Order. Because the purpose of the second amended complaint was to attempt to

state additional factual allegations in support of deficient claims, the court must still review whether it has succeeded in doing so.  To the extent that the second amended complaint adds new factual allegations to meet the Twombly/Iqbal plausibility pleading standard, the court will GRANT the second amended complaint.  However, where the factual allegations do not state a plausible cause of action, the court will grant dismissal of those portions of the second amended complaint.

It must also be understood that, to the extent the second amended complaint is reinstated, it becomes the operative pleading of the plaintiffs' claims.  Eleventh Circuit law is quite clear that the filing of an amended complaint *supplants* and *replaces* the original complaint.  As one district court has explained:

> [T]he Eleventh Circuit has made it clear that an amended pleading supersedes entirely (i.e., supplants) the pleading that it amends.  *See Pintando v. Miami–Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) ("[A]n amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary." (quoting *Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006))); *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1219 (11th Cir. 2007) ("Under ... federal law, an amended complaint supersedes the initial complaint and becomes the operative pleading in the case.").

Jones Creek Investors, LLC v. Columbia County, Ga., 2011 WL 7446782, at *5 (S.D. Ga. Dec. 9, 2011), report and recommendation adopted, 2012 WL 694316

(S.D. Ga. Mar. 1, 2012).  This means, of course, that to the extent the court allows the second amended complaint, it replaces and supplants the original and first amended complaints, and it is the operative statement of the plaintiffs' claims against *all* defendants.  For that reason, the court will review the allegations of the second amended complaint against the motions to dismiss previously filed in order to identify those parts of the second amended complaint still subject to dismissal on motion by the defendants.

I.  Claims against Brett Davis and Scott Davis Chip Mill, Inc.

Because these defendants did not file a motion to dismiss the original or first amended complaint, all claims in the second amended complaint are pending against them.  To be clear, the second amended complaint pleads the following claims against these defendants:

1.    Count One--Racially discriminatory denial of contract (42 U.S.C. § 1981).

2.  Count Two--Civil conspiracy under Alabama state law.[1]

3.    Count Three--Racketeering in civil violation of RICO, 18 U.S.C. § 1964(c).

---

[1]  Although Count Two expressly states that it is pleading conspiracy under both federal and state law, for the reasons explained below, there is no federal conspiracy action.  A conspiracy of this sort is not actionable under either 42 U.S.C. § 1983 (no state actors involved) or § 1985(3), and the court is unaware of any basis for recognizing a *federal* common law conspiracy theory.  The only civil conspiracy claim that can be stated is under Alabama state law.

4. Count Four--Racially discriminatory violation of rights under 42 U.S.C. § 1982.

5. Count Five—Conspiracy to deprive Civil Rights under 42 U.S.C. § 1985.

6. Count Six—Unjust Enrichment under Alabama law.

7. Count Seven—Fraud and deceit under Alabama law.

These claims against the defendants are stated in the second amended complaint and have not been challenged in any motion by defendants Brett Davis and Scott Davis Chip Mill.


II.  Claims against Jamie Brasher

The same seven counts have been pleaded against defendant Jamie Brasher. For the reasons explained in the court's January 21, 2016 Memorandum Opinion and Order, Brasher's motion to dismiss is DENIED as to Count One and as to plaintiff Jackson's claim for unjust enrichment in Count Six.  His motion to dismiss is GRANTED as to plaintiff Jones's claim for unjust enrichment in Count Six and, as discussed below and in the court's January 21, 2016 Memorandum Opinion and Order, as to Counts Four, Five, and Seven, all of which are hereby DISMISSED WITH PREJUDICE.

The plaintiffs' motion for reconsideration is GRANTED as to the dismissal of their claim against Brasher in Count Three for a civil RICO racketeering

violation, and his motion to dismiss that count of the second amended complaint is DENIED.   For the reasons explained below, the court finds that the second amended complaint has adequately pleaded a civil RICO claim against Brasher, as well as the other defendants.

### III.  Claims against McMillan Trucking and Mike McMillan

The second amended complaint attempts to state new factual allegations against defendant McMillan Trucking, a corporation previously dismissed by the court.  The second amended complaint alleges that defendant Jamie Brasher was an employee of McMillian Trucking tasked by both McMillan Trucking and Scott Davis Chip Mill, another corporation, to assign loads for truckers to haul wood chips to Texas.  It alleges that defendant Brett Davis, the owner and operator of Scott Davis Chip Mill, devised a scheme by which Brasher would demand from African-American truckers (but not White truckers) a $100 cash kickback to be assigned loads to haul.  This scheme was valuable to all defendants in that it allowed Brasher to increase his compensation without cost to the other defendants and without incurring tax consequences.  The second amended complaint alleges that McMillan Trucking and its owner, Mike McMillan, "authorized" Brasher to engage in the scheme as their employee and agent.  (Doc. 45, ¶¶ 11, 12).  The second amended complaint alleges that Brasher would call trucker to come to the

Scott Davis Chip Mill plant with the intent that he would demand the payment from them.  If they did not pay, he "threatened that… they would only get loads if there were loads left after those who paid the $100 cash per load got their loads." (Id. at ¶ 12).  Plaintiff Jones refused to pay, but plaintiff Jackson paid the charge on three occasions.  The second amended complaint goes on to allege:

> Mike McMillan was also complicit in this because even after a discussion about it with Brett Davis, he did not merely acquiesce to or ratify the past conduct but in fact authorized continued illegal conduct with his actions allowing his employee to continue the scheme. Neither Defendant Davis nor McMillan wanted to lose Defendant Brasher as an employee or agent.  Defendant Brasher was so valuable to Defendants Davis and McMillan that they authorized Brasher to continue the illegal activity in order to keep the benefits that he gave them being in that position as long as they did not have to give Defendant Brasher any additional money or pay taxes on any additional money.  These benefits included McMillan Trucking's being assigned more and more profitable loads and Scott Davis Chip Mill's not having to pay for a dispatcher.  This was done in furtherance of the business of the employer, McMillan Trucking and Scott Davis Chip Mill.  Although Defendants Davis and McMillan may not have received a portion of the $100 per load kickback proceeds, all Defendants benefited from the illegal activity by saving money, making money in additional loads, and receiving beneficial services in return for authorizing the illegal activity.

(Doc. 45, ¶ 17).  The second amended complaint also alleges that, once the African-American truckers refused to pay the kickback, they were "cut-off" from being assigned additional loads.  The complaint alleges that on the Scott Davis Chip Mill property

was a board prominently displayed that was used to show hauling assignments.   This board was frequently reviewed by Defendant Davis, other drivers, and all individual who regularly frequented the property.   As noted above, Scott Davis Chip Mill and McMillan Trucking are located on the same property.  After Plaintiffs Jones and Jackson complained about the illegal kickback scheme, the words "cut off" were written by their names on the board. This was designed to retaliate against the Plaintiffs as well as to send a message to all the other African American drivers. It put all African American truckers who continued working for them on notice to compel them to participate in and stay quiet about the kickback scheme or else risk losing their livelihoods."

(Id. at ¶ 20).

The court finds that these allegations sufficiently state a cause of action against McMillan Trucking and Mike McMillan for a violation of 42 U.S.C. § 1981 and a state-law claim of civil conspiracy, as alleged in Counts One and Two, respectively, of the second amended complaint.   As to these claims, the motion for reconsideration is GRANTED and defendants McMillan Trucking and Mike McMillan shall be required to file an answer within twenty-one (21) days.

Count Three of the second amended complaint, which alleges a civil RICO claims under 18 U.S.C. § 1964(c), fails to plead facts showing a RICO predicate act.  A explained in the January 21, 2016 Memorandum Opinion and Order, to allege a claim under the civil RICO provisions, the plaintiffs must allege facts plausibly showing "four elements of proof: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"  Williams v. Mohawk Industries,

Inc., 465 F.3d 1277, 1282 (11th Cir. 2006), quoting  Jones v. Childers, 18 F.3d

899, 910 (11th Cir. 1994) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479,

496, 105 S. Ct. 3275, 3285, 87 L. Ed. 2d 346 (1985))).  Additionally for a civil

RICO remedy, the plaintiffs must allege that they were "injured in [their] business

or property by reason of" RICO's substantive provisions has the right to "recover

threefold the damages... ." 18 U.S.C. § 1964(c).  To show a pattern of racketeering

activity, the plaintiffs must allege facts showing that the defendants, as an

"enterprise," engage in two or more predicate crimes, such as wire fraud, mail

fraud, or extortion.  Here, the plaintiffs allege that the defendants engaged in wire

fraud and extortion.

In the RICO context, courts in the Eleventh Circuit have defined wire fraud

and mail fraud in the following way:

> Mail or wire fraud occurs when a person (1) intentionally participates
> in a scheme to defraud another of money or property and (2) uses the
> mails or wires in furtherance of that scheme.  United States v. Downs,
> 870 F.2d 613, 615 (11th Cir. 1989).  A "scheme to defraud" entails
> the making of misrepresentations intended and reasonably calculated
> to deceive persons of ordinary prudence and comprehension.  Pelletier
> v. Zweifel, 921 F.2d 1465, 1498–99 (11th Cir. 1991). Rule 9(b) of the
> Federal Rules of Civil Procedure requires that "[i]n all averments of
> fraud or mistake, the circumstances constituting fraud or mistake shall
> be stated with particularity."  That is, the Plaintiffs must allege "(1) the
> precise statements, documents, or misrepresentations made; (2) the
> time, place, and person responsible for the statement; (3) the content
> and manner in which these statements misled the Plaintiffs; and (4)
> what the defendants gained by the alleged fraud."  Brooks v. Blue

Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1380–81 (11th Cir. 1997).

In re Managed Care Litigation, 135 F. Supp. 2d 1253, 1262 (S.D. Fla. 2001).  For the reasons explained in connection with plaintiffs' state-law fraud claim, there has been no *misrepresentation* by the defendants with respect to their scheme to demand kickbacks.  They did not deceive the plaintiffs about the kickback scheme, but openly told them that they would not get loads assigned to them without paying the kickback.  In the absence of a misrepresentation used to deceive the plaintiffs to their detriment, there can be no predicate act of wire fraud or mail fraud.

Plaintiffs also allege the predicate criminal act was extortion—no loads assigned to them unless they paid the kickback demanded.  Although extortion ordinarily involves obtaining money or things of value from another "by wrongful use of actual or threatened force, violence, or fear, or under color of official right," 18 U.S.C. § 1951(b)(2), and there is no allegation of "force, violence, or fear" or "official right" in the second amended complaint, at least one court has recognized the possibility of "economic coercion" as a form of extortion.  See In re Managed Care Litigation, 135 F. Supp. 2d 1253, 1264 (S.D. Fla. 2001) ("By submitting that the Defendants have in effect held an economic gun to the Plaintiffs' heads and used other coercive methods to obtain property from the providers, these Plaintiffs have sufficiently pled claims of extortion under the relaxed standard set forth in the

federal pleading rules.").  This same theory is advanced here by the plaintiffs—the defendants could and did exercise "economic coercion" to attempt to force the plaintiffs to pay the kickbacks.  This is bolstered by their allegation that, after refusing to make the kickback payments, they were "cut off" from further assignment of loads, resulting in economic distress to their trucking businesses.  As recognized in In re Managed Care Litigation, this allegation is sufficient at least for Rule 12(b)(6) purposes.

Additionally, the court finds that the second amended complaint has alleged new and sufficient facts to support an inference that a RICO "enterprise" existed. Although the court's January 21, 2016 Memorandum Opinion and Order concluded, on the basis of the facts alleged in the original and first amended complaint that plaintiffs had not sufficiently pleaded the "enterprise" element of a RICO, the new allegations in the second amended complaint do so.  Plaintiffs have now alleged that McMillan and McMillan Trucking, Brasher's employer, were not only aware of and allowed him to engage in the kickback scheme, but that these defendants also benefited economically from it.  There was a joint effort to engage in it and to cover up its illegal character because all defendants gain an economic benefit.  Brett Davis and Scott Davis Chip Mill gained by not having to hire a dispatcher to assign trucking loads, Brasher benefited from the cash he received in kickback payments, and McMillan Trucking and Mike McMillan gained by having

a preferential positon in being assigned loads by its own employee—Brasher, acting on behalf of Davis and Scott Davis Chip Mill.  Accordingly, the motion for reconsideration is GRANTED to allow the second amended to complaint to plead a civil RICO claim against all of the defendants in the action.

Count Four of the second amended complaint alleges a violation of "federal statutory law including 42 U.S.C. § 1982 by denying or attempting to deny Plaintiffs the same rights in leasing as white truckers."  (Doc. 45, ¶ 48).  Aside from a claim under § 1981, discussed above, the court is not required to guess at what other "federal statutory law" the plaintiffs may be relying upon.  Insofar as they rely on § 1982, the second amended complaint fails to state a claim.  Section 1982 guarantees to all citizens "the same right… as enjoyed by white citizens… to inherit, purchase, lease, sell, hold, and convey real and personal property."  42 U.S.C. § 1982.  As alleged here, the plaintiffs were not deprived of the any incidents of real or personal property---they were deprived of the equal opportunity to contract.  They cannot claim as cognizable real or personal property some "right" to be assigned loads to haul.  Thus, § 1982 simply does not apply to these factual allegations.[2]  The motion to reconsider is DENIED as to Count Four of the

---

[2]  If the plaintiffs intended to state this claim under 42 U.S.C. § 1983, the same result obtains. Section 1983 cannot be used a vehicle for vindicating equal contract rights against private (non-state) actors.

second amended complaint and that claim is not before the court as to these two defendants.

Count Five attempts to allege a claim for a civil rights conspiracy under 42 U.S.C. § 1985.   For the reasons explained in the January 21, 2016 Memorandum Opinion and Order, this count continues to fail to state a cause of action.  The only legal basis for such a claim would be § 1985(3),[3] but the Eleventh Circuit case of <u>Jimenez v. Wellstar Health System</u>, 596 F.3d 1304 (11th Cir. 2010), makes clear that allegations of a conspiracy among private actors to violate the equal protection rights of a person to contract or own property are not sufficient to state a claim for violation of § 1985(3).  As that court explained:

> To state a claim under § 1985(3), a plaintiff must allege: (1) defendants engaged in a conspiracy; (2) the conspiracy's purpose was to directly or indirectly deprive a protected person or class the equal protection of the laws, or equal privileges and immunities under the laws; (3) a conspirator committed an act to further the conspiracy; and (4) as a result, the plaintiff suffered injury to either his person or his property, or was deprived of a right or privilege of a citizen of the United States. *Johnson v. City of Fort Lauderdale*, 126 F.3d 1372, 1379 (11th Cir. 1997).  When the alleged § 1985(3) conspirators are private actors, the plaintiff must demonstrate that the conspiracy was aimed at rights constitutionally protected against private impairment. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 274, 113 S. Ct. 753, 763, 122 L. Ed. 2d 34 (1993); *Park v. City of Atlanta*, 120 F.3d 1157, 1162 (11th Cir.1997).  These rights include only select

---

[3]   The other two subsections of § 1985 do not apply to these facts.  Section 1985(1) provides a remedy against conspiracies intended to interfere with the acts and functions of public officers, while § 1985(2) provides a remedy against conspiracies to interfere with witnesses, jurors, or parties in federal court proceedings or otherwise to obstruct justice.  The second amended complaint does not allege facts implicating either of these provisions.

"serious constitutional right [s]."  *Cook v. Randolph County*, 573 F.3d 1143, 1157 (11th Cir. 2009) (quotation omitted). The only rights the Supreme Court has expressly declared enforceable against private conspirators under § 1985(3) are the right to interstate travel and the right against involuntary servitude.  *See Bray*, 506 U.S. at 278, 113 S. Ct. at 764. Conversely, the Supreme Court has declared the freedom of speech, id., and the rights protected under Title VII, *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378, 99 S. Ct. 2345, 2352, 60 L. Ed. 2d 957 (1979), insufficient to form the basis of § 1985(3) actions against private conspirators.

Jimenez v. Wellstar Health Systems, 596 F.3d 1304, 1312 (11th Cir. 2010). Moreover, the court of appeals cited the Third Circuit case of Brown v. Philip Morris Inc., 250 F.3d 789, 805–06 (3d Cir. 2001), as holding that "property and contract rights are statutorily, not constitutionally, protected and therefore a conspiracy to violate those rights is an insufficient foundation for a § 1985(3) claim." Jimenez, at 1312, n. 7.  Not long after Jimenez, the court of appeals reiterated, "This Court has held that conspiracies to violate property and contract rights, though protected under § 1981, are insufficient to form the basis of a § 1985(3) claim against a private actor." Cooksey v. Waters, 435 F. App'x 881, 883 (11th Cir. 2011).  See also Gilmore v. Nat'l Mail Handlers Union Local 318, 517 F. App'x 784, 788 (11th Cir. 2013) ("Conspiracies to violate rights protected by Title VII and § 1981 are not cognizable under § 1985(3)."); Thomas v. Wright, 2014 WL 6983302, at *2 (N.D. Ala. Dec. 10, 2014), appeal dismissed (Feb. 13, 2015); Crossdale v. Burandt, 2015 WL 1277829, at *6 (M.D. Fla. Mar. 20, 2015),

reconsideration denied, 2015 WL 2365754 (M.D. Fla. May 18, 2015); <u>Harvey v.</u>
<u>Uhs Pruitt Holdings, Inc.</u>, 2016 WL 393997, at *8 (M.D. Ga. Feb. 1, 2016).
Because the alleged co-conspirators are all private actors and the only right at issue
is the statutorily-created right to the racially equal opportunity to make contracts,
the facts alleged do not state a claim for a § 1985(3) conspiracy.

Accordingly, the motion for reconsideration is DENIED insofar as it seeks
to have the second amended complaint recognized as stating a claim under § 1985
against defendants McMillan and McMillan Trucking, and that claim is not before
the court against these two defendants..

Count Six attempts to allege a state-law claim for unjust enrichment, but
under the allegations of the second amended complaint, only defendant Brasher
retained the money paid by plaintiff Jackson.  There is no allegation that Brasher
shared the money with any other defendant.  Unjust enrichment is an equitable
remedy under which a court can require someone to disgorge moneys wrongfully
obtained or retained.  Here, only Brasher is alleged to have obtained or retained
any moneys extorted from the plaintiffs, and therefore, it is only Brasher who may
be subject to this remedy.  The motion for reconsideration is DENIED insofar as it
seeks to have the second amended complaint recognized as stating a claim for
unjust enrichment against McMillan Trucking or Mike McMillan, and that claim is
not before the court against these two defendants.

Finally, Count Seven of the second amended complaint attempts to allege state-law claims for fraud and deceit.  For the reasons explained in the January 21, 2016 Memorandum Opinion and Order, the second amended complaint continues to fail to allege a claim on these theories.  There is no allegation in the second amended complaint that Brasher or the other defendants lied about or misled the plaintiffs about the requirement or purpose of the payments in any way that induced them to make the payments.  They were told directly and candidly that they would not be assigned loads if the kickback payments were not made.  When Jackson made the payments, he was assigned loads.[4]  Although the alleged kickback scheme may be illegal and actionable on other grounds, there simply was no false statement made about a currently existing fact, which is an essential element of a fraud or deceit under Alabama law.  Additionally, as to defendants McMillan Trucking and Mike McMillan, there is no allegation that these defendants made any representation at all to the plaintiffs. Therefore, the motion to reconsider is DENIED insofar as it seeks to have the second amended complaint recognized as stating a claim for fraud and deceit.  These claims are not before the court with respect to these two specific defendants.

---

[4]  Also, the clear allegations of the second amended complaint assert that plaintiff Jones made *no* payments.  Therefore, even if false statements were made, Jones did not rely on them to his detriment, another essential element of a fraud/deceit claim.

IV. <u>Summary</u>

To try to make clear the claims and defendants now remaining under the allegations of the second amended complaint, the court offers the following summary.  Because defendants Brett Davis and Scott Davis Chip Mill have not filed a motion to dismiss the allegations of any complaint, all seven counts of the second amended complaint remain pending against them.  To the extent claims may have been pleaded in earlier complaints but not re-pleaded in the second amended complaint, those claims have now been abandoned.[5]  If the claims are not in the second amended complaint, they are not in the case.

As to defendant Brasher, the plaintiffs have sufficiently pleaded claims under Counts One (race discrimination in contract), Two (civil conspiracy), and Three (civil RICO), and an unjust enrichment claim under Count Six only as to plaintiff Jackson.  All other claims attempted to be pleaded against him in the second amended complaint are DISMISSED.  Defendant Brasher is DIRECTED to file an amended answer with respect to the second amended complaint within fourteen (14) days after this Order.

As to defendants Mike McMillan and McMillan Trucking, the plaintiffs have sufficiently pleaded claims under Counts One (race discrimination in

---

[5]  The only apparent difference between the first amended complaint and the second amended complaint with respect to the legal theories pleaded is that the second amended complaint does not have a Count Eight, alleging a claim under the constitution of the State of Alabama.  Because it was not included in the second amended complaint, that claim has been abandoned.

contract), Two (civil conspiracy), and Three (civil RICO).   All other claims attempted to be pleaded against them in the second amended complaint are DISMISSED.   Defendants McMillan and McMillan Trucking are DIRECTED to file an amended answer with respect to the second amended complaint within fourteen (14) days after this Order.

DONE this 30th day of June, 2016.

_____

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE